# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 2, 2011 Session

## CHERYL BROWN GIGGERS ET AL.
## v.
## MEMPHIS HOUSING AUTHORITY ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-000896-03      Kay S. Robilio, Judge**

---

**No. W2010-00806-SC-R11-CV - Filed April 2, 2012**

---

The plaintiffs, survivors of a tenant killed by the criminal act of another tenant, filed suit against the defendant housing authority. The plaintiffs alleged the housing authority was negligent in failing to evict the other tenant at the first instance of violent behavior. The housing authority filed a motion for summary judgment claiming federal regulations preempted the plaintiffs' negligence claim and that it was immune from suit under the Tennessee Governmental Tort Liability Act ("the GTLA"). The trial court denied summary judgment. The Court of Appeals reversed the trial court. We granted review to determine whether the plaintiffs' negligence claim is preempted by federal law or, in the alternative, whether the housing authority is immune from suit under the discretionary function exception of the GTLA. We conclude that the plaintiffs' negligence suit is not preempted by federal law. We further conclude that the housing authority's failure to evict is an operational decision and that the housing authority is not entitled to immunity under the GTLA. We reverse the Court of Appeals and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Reversed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Archie Sanders, III, Memphis, Tennessee, for the appellants, Angela G. Brown, Charles C. Brown, Jr., Cheryl Brown Giggers, and JoAnn Fisher

Joe Lee Wyatt and William Joseph Wyatt, Memphis, Tennessee, for the appellant, Scruggs Security and Patrol, LLC

Charles Wesley Fowler, Memphis, Tennessee, for the appellee, Memphis Housing Authority

**OPINION**

I. Facts and Procedural History

On February 26, 2003, Cheryl Brown Giggers, Charles C. Brown, Jr., Angela G. Brown, and Joann Fisher ("the plaintiffs") filed a complaint against the City of Memphis ("the City") and Memphis Housing Authority ("MHA") for the wrongful death of Charles Cornelius Brown, Sr. ("the decedent"). The decedent, a resident of a housing project operated by MHA, was killed by a stray bullet on March 7, 2002, when fellow tenant, L.C. Miller, fired a gun in the direction of the housing project's security office.

The plaintiffs alleged in their complaint that the City and MHA were negligent in failing to properly investigate Mr. Miller's criminal background and in failing to assess the risk that Mr. Miller posed to other tenants of the housing project. The plaintiffs also alleged that the City and MHA breached the decedent's lease agreement by failing to safely maintain the housing project.

The trial court granted the City's motion to dismiss and the plaintiffs amended their complaint, naming MHA as the sole defendant. After receiving MHA's answer alleging comparative fault, the plaintiffs again amended their complaint to add MHA's contracted security company, Scruggs Security and Patrol, LLC ("Scruggs"), as a defendant. The plaintiffs alleged that Scruggs failed to properly secure the housing project at the time of the shooting.

MHA filed a motion for summary judgment asserting that MHA owed no duty to the plaintiffs or to the decedent with respect to Mr. Miller's criminal actions. The trial court agreed and granted MHA's summary judgment motion. The Court of Appeals affirmed the trial court. Giggers v. Memphis Hous. Auth., No. W2006-00304-COA-R3-CV, 2007 WL 2216553, at *13 (Tenn. Ct. App. Aug. 3, 2007). This Court granted permission to appeal and reversed the summary judgment. Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 371 (Tenn. 2009) ("Giggers I"). We determined that "a special relationship exists between a landlord and a tenant, placing an obligation on a landlord to take reasonable measures of protection." Id.

On remand, MHA moved to dismiss the plaintiffs' amended complaint because the plaintiffs had not alleged that MHA had a duty to evict Mr. Miller. The trial court denied MHA's motion and permitted the plaintiffs to amend their complaint a third time. See Tenn. R. Civ. P. 15.01. In the third amended complaint, the plaintiffs alleged that MHA breached

the duty of care owed to the decedent by failing to evict Mr. Miller following an aggravated assault against another tenant in the same MHA housing project in 1998. The plaintiffs also alleged that MHA had a "one-strike" policy in place during 1998 that should have resulted in Mr. Miller's eviction after the aggravated assault.[1] Although MHA did not evict Mr. Miller, it placed Mr. Miller on probation for one year following the 1998 incident. Mr. Miller was not involved in any other altercations during the probationary period.

In response to the plaintiffs' amended complaint, MHA filed a motion for summary judgment on the grounds that the plaintiffs' negligence claim was preempted by federal law or, in the alternative, that MHA was immune from suit pursuant to the discretionary function exception to the Tennessee Governmental Tort Liability Act ("the GTLA"). Tenn. Code Ann. § 29-20-205(1) (2000). The trial court denied summary judgment.[2] The trial court, however, permitted MHA to file an application for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure because it found "merit to [MHA's] arguments."

The Court of Appeals granted MHA's application for interlocutory appeal and reversed the trial court's denial of summary judgment. The Court of Appeals held that summary judgment in favor of MHA was appropriate because federal law preempted the plaintiffs' claim and because MHA was immune from suit under the GTLA. Giggers v. Memphis Hous. Auth., No. W2010-00806-COA-R9-CV, 2010 WL 5140614, at *14 (Tenn. Ct. App. Dec. 14, 2010). The Court of Appeals remanded the case to the trial court to enter summary judgment in favor of MHA. Id. We granted permission to appeal.

## II. Analysis

At issue in this case is whether the Court of Appeals erred in holding that federal law preempted the plaintiffs' claim and that MHA was immune from suit pursuant to the GTLA. By remanding the case to the trial court, the Court of Appeals effectively granted summary judgment to MHA. The resolution of a motion for summary judgment is a question of law, which we review de novo. Martin v. Norfolk S. Ry., 271 S.W.3d 76, 84 (Tenn. 2008). We first address federal preemption of the plaintiffs' negligence claim against MHA before examining MHA's immunity from suit under the GTLA.

---

[1] In construing the facts in a light most favorable to the plaintiffs, this Court acknowledged MHA's "one-strike" policy in Giggers I. 277 S.W.3d at 362. Following remand, MHA denied the existence of a one-strike policy.

[2] The trial court did not include the legal grounds for its denial of summary judgment as required by Tennessee Rule of Civil Procedure 56.04.

## A. Federal Preemption

The Supremacy Clause of the United States Constitution mandates that federal law preempt contrary state law. See U.S. Const. art. VI, cl. 2. The United States Supreme Court has held that state law may not frustrate or stand as an obstacle to the legislative purpose of a federal statute. Geier v. Am. Honda Motor Co., 529 U.S. 861, 873-74 (2000). Preemption can arise either in the form of explicit legislation by Congress or when federal legislation implicitly conflicts with state law. See Leggett v. Duke Energy Corp., 308 S.W.3d 843, 853 (Tenn. 2010) (discussing the difference between "express" preemption and "implied" preemption). Implied conflict preemption occurs when it would be impossible to comply with both state law and federal law or when congressional purpose in enacting the federal law is impeded by state law. United States v. Locke, 529 U.S. 89, 109 (2000) (quoting California v. ARC Am. Corp., 490 U.S. 93, 100-01 (1989)).

There is no express federal legislation barring negligence suits against public housing authorities. MHA contends, however, that permitting the plaintiffs to proceed with their negligence claim would pose an obstacle to the accomplishment of the full purposes and objectives of Congress in enacting 42 U.S.C. § 1437d (1994).[3] The question of whether a state law action is preempted by federal law is reviewed de novo as a question of law. Leggett, 308 S.W.3d at 851(quoting Friberg v. Kansas City S. Ry., 267 F.3d 439, 442 (5th Cir. 2001)). To address whether the plaintiff's negligence claim stands as an obstacle to 42 U.S.C. § 1437d, we must determine the congressional purpose in enacting § 1437d. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (noting "'the purpose of Congress is the ultimate touch-stone in every pre-emption case'") (quoting Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)).

To determine the purpose of § 1437d we first examine the language of the statute. Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982). Section 1437d dictates the requirements for public housing authority ("PHA") tenant leases and puts tenants on notice that engaging in activity that threatens another tenant's "health, safety, or right to peaceful enjoyment of the premises" may result in termination of the tenant's lease. Criminal conduct or activity of a public housing tenant, a member of the tenant's household, or a guest or other person under the tenant's control may result in termination of tenancy. 42 U.S.C.

---

[3] The 1994 version of 42 U.S.C. § 1437d and the corresponding 1996 regulations govern this case because the plaintiffs' claim arises out MHA's failure to evict Mr. Miller after an altercation in 1998. The 1994 statute and 1996 regulations also control the lease executed by Mr. Miller and MHA in 1996.

§ 1437d(l)(5) (1994).[4]  Because this particular section does not contain its own statement of purpose, we look to the statute as a whole.

The United States Supreme Court frequently refers to the stated purpose of legislation to interpret language in the operative sections.  See United States v. Turkette, 452 U.S. 576, 588-90 (1981).  In this case, § 1437d is contained within the United States Housing Act of 1937 ("the 1937 Act").  Pub. L. No. 75-412, 50 Stat. 888 (1937) (codified as amended at 42 U.S.C. § 1437).  The stated purpose of the 1937 Act is "to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income."  Id.  Although the original purpose of the 1937 Act was to provide safe housing for low income families, Congress later amended the Act to address the growing problem of criminal activity in housing projects.  The 1937 Act was amended in part by the Anti-Drug Abuse Act of 1988.  It is this amendment that added the statutory language of § 1437d to the 1937 Act. Pub. L. No. 100-690 § 5101, 102 Stat. 4181 (1988); see also Dep't of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 127-28 (2002).  Congress enacted the Anti-Drug Abuse Act of 1988 with the objective of reducing drug-related crime in public housing and ensuring "public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs."  Rucker, 535 U.S. at 134.  We therefore interpret § 1437d within the broader statutory context of the United States Housing Act of 1937 and in light of the original purpose of this statute and its 1988 amendment.  Herman & Maclean v. Huddleston, 459 U.S. 375, 387 n. 23 (1983) (quoting Silver v. N.Y. Stock Exch., 373 U.S. 341, 357 (1963)).  We conclude that the purpose of 42 U.S.C. § 1437d is to promote safe public housing for PHA tenants.

We next consider whether permitting the plaintiffs' negligence claim to proceed would stand as an obstacle to the congressional purpose of promoting safe public housing.  The United States Supreme Court has noted that courts should not assume that Congress intends to supersede state law.  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995).  The presumption against preemption is especially strong in areas that are within the historic police powers of the states.  Wyeth v. Levine, 555 U.S. 555, 565 (2009) (quoting Medtronic, 518 U.S. at 485).  States traditionally have regulated health and safety matters.  Medtronic, 518 U.S. at 485.  The Supreme Court has exercised restraint when considering whether to preempt a state's authority to regulate tort litigation.  See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247 (1959) ("State jurisdiction has prevailed in [tort] situations because the compelling state interest, in

_____

[4] In 1998, 42 U.S.C. § 1437d(l)(5) was redesignated as 42 U.S.C. § 1437d(l)(6). Pub. L. No. 105-276 § 512, 112 Stat. 2461 (1998).  For consistency, we will refer to this statute under the redesignation as it appears today.

the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction.").

In determining whether the plaintiffs' negligence claim would stand as an obstacle to the stated purpose of the United States Housing Act of 1937, we also consider the federal housing regulations that implement 42 U.S.C. § 1437d. The Department of Housing and Urban Development ("HUD") is the agency empowered to administer the federal statute and to promulgate regulations interpreting 42 U.S.C. § 1437d. See 42 U.S.C. § 3535(d) (1996); see also King v. Hous. Auth. of Huntsville, 670 F.2d 952, 954 (11th Cir. 1982). Although federal regulations are not legislative enactments, a federal regulation may preempt state law when the state law directly conflicts with the regulation or when it is impossible to comply with both the state law and the regulation. See Wyeth, 555 U.S. at 576 ("This Court has recognized that an agency regulation with the force of law can pre-empt conflicting state requirements.").

HUD regulations supplement the language of 42 U.S.C. § 1437d. See Rucker, 535 U.S. at 128-29. The HUD regulation regarding tenant lease requirements reiterates that eviction may occur should tenants or their guests engage in criminal activities that threaten the health or safety of other residents.[5] The HUD regulations also provide more specific instructions to PHAs operating housing projects. PHAs contemplating eviction of a tenant are instructed to consider the specific circumstances of the tenant's case, the seriousness of the offense, family members' involvement in the criminal activity, and the effect eviction would have on innocent family members.[6]

---

[5] 24 C.F.R. § 966.4(f)(12)(i)(A) (1996). The relevant portion of the regulation states:

> The lease shall provide that the tenant shall be obligated . . . [t]o assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in . . . [a]ny criminal activity that threatens the health, safety, or right to peaceful enjoyment of the PHA's public housing premises by other residents or employees of the PHA . . . .

Id.

[6] 24 C.F.R. § 966.4(l)(5)(i) (1996). The regulation states in its entirety:

> In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued

(continued...)

-6-

Rather than standing as an obstacle to promoting safe public housing, permitting the plaintiffs' negligence claim complements the purpose of § 1437d. The purpose of the United States Housing Act of 1937 and its 1988 amendment is to promote safe public housing for PHA tenants. Section 1437d puts tenants on notice that activity that threatens another tenant's health or safety may result in termination of the tenant's lease. HUD regulations provide public housing authorities with the discretion to evict tenants to promote public housing that is safe and free from crime. See 24 C.F.R. § 966.4(l). Allowing the plaintiffs' negligence claim to proceed does not restrict MHA's exercise of discretion or obstruct the purpose of § 1437d or its corresponding regulations. Instead, allowing the negligence claim to stand promotes safe public housing for tenants by providing a remedy when a public housing authority exercises its federally vested discretion in a negligent manner. The plaintiffs' claim will impose liability on MHA only if the trial court determines that under the facts in this case MHA was negligent in failing to evict Mr. Miller in 1998. We hold that the plaintiffs' negligence suit is not preempted by 42 U.S.C. § 1437d.

### B. Sovereign Immunity

Generally, the GTLA forecloses suits against governmental entities that cause injury when exercising or discharging their duties. Tenn. Code Ann. § 29-20-201(a) (2000). An exception to this rule permits a suit against a governmental entity when an employee of that entity acting within the scope of his employment negligently causes injury to another. Tenn. Code Ann. § 29-20-205. A governmental entity remains immune from suit, however, if the injury results from a discretionary act of the governmental entity regardless of whether that discretion was abused. Tenn. Code Ann. § 29-20-205(1); see also Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 84-85 (Tenn. 2001). The rationale behind this "discretionary function exception" is to prevent courts from questioning decisions of governmental entities that are primarily legislative or administrative. Limbaugh, 59 S.W.3d at 85.

To determine whether a governmental entity is entitled to immunity for a discretionary decision, this Court applies the "planning-operational test." Bowers v. City of Chattanooga, 826 S.W.2d 427, 430 (Tenn. 1992). A governmental entity is immune from suit for actions involving "planning or policy-making." Helton v. Knox Cnty., 922 S.W.2d 877, 885 (Tenn.

---

[6] (...continued)
occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit. A PHA may require a family member who has engaged in the illegal use of drugs to present evidence of successful completion of a treatment program as a condition to being allowed to reside in the unit.

1996) (quoting Bowers, 826 S.W.2d at 430). When the act is merely "operational," the entity is not immune. Id.

In Bowers, we determined that a planning decision usually involves consideration and debate regarding a particular course of action by those charged with formulating plans or policies. Bowers, 826 S.W.2d at 431; see also Helton, 922 S.W.2d at 885. A planning decision frequently requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities. Bowers, 826 S.W.2d at 431. Planning or policy-making decisions are not subject to tort liability, and a review of these decisions requires judicial restraint. Limbaugh, 59 S.W.3d at 85.

Operational decisions, however, implement "preexisting laws, regulations, policies, or standards" that are designed to guide the actions of the governmental entity. Bowers, 826 S.W.2d at 431. An operational decision requires that the decision-maker act reasonably when implementing preexisting policy. Limbaugh, 59 S.W.3d at 85. Unlike a planning or policy-making decision, an operational decision does not involve the formulation of new policy.

Turning to the facts in this case, HUD is the authority charged with the creation of policies and procedures to promote safe public housing. Although HUD's formulation of policy or procedure may be considered a discretionary function, the implementation of that policy is an operational decision. See Bowers, 826 S.W.2d at 431. Section 1437d and the corresponding HUD regulations provide MHA with guidance in operating its housing properties. HUD regulations provide a list of preexisting policy considerations for MHA to use when contemplating eviction of a tenant. HUD instructs MHA to consider the seriousness of the offense, the participation by other family members, and the effect that the eviction would have on innocent family members. 24 C.F.R. § 966.4(l)(5)(i).

MHA uses its judgment when determining whether eviction of a tenant is appropriate. See 24 C.F.R. § 966.4(l)(5). The discretion used to exercise that judgment, however, does not convert an otherwise operational decision into one that is discretionary. See Bowers, 826 S.W.2d at 431 ("[D]iscretionary function immunity does not automatically attach to all acts involving choice or judgment."). In making eviction decisions, MHA must exercise its discretion within the confines of HUD's preexisting policies. In that way, MHA's eviction decisions are operational in nature. To hold otherwise would be to convert every operational decision requiring choice into a discretionary function.

The parties have debated the existence of a "one-strike" policy that would have required MHA to evict Mr. Miller in 1998 following his aggravated assault against another tenant. We observe that the existence of MHA's "one-strike" policy is not controlling in our analysis. Even assuming that MHA discussed and established a policy requiring the eviction

of a tenant after the first instance of disruptive behavior, MHA did not follow that policy in Mr. Miller's case. When a negligent act occurs in contravention of an established policy, that act is operational in nature and is not entitled to immunity under the GTLA. Chase v. City of Memphis, 971 S.W.2d 380, 384 (Tenn. 1998). In the absence of a one-strike policy, MHA's actions still would be guided by the preexisting guidelines issued by HUD and would therefore be considered operational.

## III. Conclusion

We conclude that 42 U.S.C. § 1437d does not preempt the plaintiffs' suit against MHA. We further conclude that MHA's decision not to evict Mr. Miller was an operational decision and is not entitled to discretionary function immunity under the GTLA. We reverse the Court of Appeals and remand this case to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Memphis Housing Authority, for which execution may issue, if necessary.

_____
JANICE M. HOLDER, JUSTICE