IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 25, 2015 Session

# LYDRANNA LEWIS, ET AL. V. SHELBY COUNTY, TENNESSEE

**Appeal from the Circuit Court for Shelby County**
**No. CT00368611    Robert S. Weiss, Judge**

_____

**No. W2014-00408-COA-R3-CV – Filed April 17, 2015**

_____

Plaintiffs worked as counselors in a correctional facility that houses male inmates in a dorm-like setting in Shelby County. In September 2010, they were attacked and beaten by an inmate. Plaintiffs filed an action for negligence against Shelby County under the Governmental Tort Liability Act, alleging the County was liable for damages caused by the negligent acts and/or omissions of County employees. Plaintiffs alleged that the supervising counselor/shift supervisor negligently failed to respond to their "code red" calls for help; that he negligently failed to provide adequate staffing and equipment; and that he negligently failed to implement the facility directives. The trial court determined that the County was entitled to summary judgment under the discretionary function exception contained in Tennessee Code Annotated § 29-20-205. We reverse and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal: Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD P.J., W.S., and BRANDON O. GIBSON, J., joined.

Eugene A. Laurenzi, Memphis, Tennessee, for the appellants, Lydranna Lewis and Cathy Miller.

Pablo A. Varela and David E. McKinney, Assistant County Attorneys, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

Plaintiffs, Lydranna Lewis ("Ms. Lewis") and Cathy Miller ("Ms. Miller"; collectively, "Plaintiffs"), were employed by the Shelby County Department of Corrections ("the DOC") as Counselors at the Adult Offender Center ("the Center") on Mullins Station Road in Memphis. On September 1, 2010, they were assaulted by an inmate at the Center, and in August 2011, they filed an action for damages against Shelby County ("the County") and Shelby County Mayor Mark Luttrell pursuant to the Governmental Tort Liability Act contained in Tennessee Code Annotated § 29-20-201, *et seq*. ("the GTLA").

In their complaint, as amended in December 2014,[2] Plaintiffs alleged that they sustained injuries as a result of an assault by an inmate while they were working on the dormitory level in Building 3 of the Center. They alleged that the Supervising Counselor, Willie Hardiman ("Mr. Hardiman"), determined that an insufficient number of counselors were present at the Center on the night of the assault; that Mr. Hardiman assigned himself to the position of "floater" in Building 3; and that Mr. Hardiman was not present in the building when Plaintiffs were assaulted. Plaintiffs further alleged that, in accordance with the Center's protocol, they radioed Mr. Hardiman for assistance twice prior to the assault, but that Mr. Hardiman failed to appear. They additionally alleged that they made four "code red" calls for assistance during the assault, but that no one appeared to assist them. Plaintiffs asserted that the active assault continued for more than five minutes until the Officer assigned to the ground floor, who was "not permitted to leave his post unattended," finally came to their assistance and subdued the inmate.

Plaintiffs alleged in their complaint that Mr. Hardiman 1) negligently failed to respond immediately to their calls for assistance; 2) negligently failed to assign adequate staffing at each post in light of inadequate available personnel; and 3) negligently failed to implement the DOC's directives with respect to responding to requests for assistance and code reds, which were designed to prevent foreseeable injuries such as those sustained by Plaintiffs. Plaintiffs asserted that Mr. Hardiman's negligent, non-discretionary acts and/or omissions proximately caused their injuries, and that the County was liable for the negligent acts of its employee. Plaintiffs sought damages in the amount of $350,000 each.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Plaintiffs named only Shelby County as Defendant in their amended complaint.

The County answered, denied liability, and filed a motion to dismiss or, in the alternative, for summary judgment on December 30, 2013. In its motion, the County asserted that Plaintiffs had failed to state a claim and that the County's immunity from suit was not removed under the GTLA. The County further asserted that the assault was an independent intervening act by a third-party that "cut[] off [the] proximate causal chain to any alleged negligent act or omission[.]" Although the County's motion was filed as a motion to dismiss or alternatively as one for summary judgment, it was supported by a memorandum and amended memorandum, a separate statement of undisputed material facts and the affidavits of two employees of the DOC attesting to personal knowledge of the events, making it fully compliant with requirements for the filing of a summary judgment motion as provided in Rule 56 of the Tennessee Rules of Civil Procedure ("Rule 56"). Plaintiffs filed their response in opposition to the County's motion. The response included, as attached exhibits, the counter- affidavit of a former Supervisor who was employed at the Center, select portions of deposition testimony, and other records and photographs. Additionally, Plaintiffs filed a separate response to defendant's statement of material facts and filed Plaintiffs' statement of additional facts, also as provided for in Rule 56. Following a hearing in January 2014, the trial court found, as a matter of law, that the County was immune from suit under the discretionary function exception to the GTLA. Plaintiffs filed a timely notice of appeal to this Court.

## Issue Presented

The sole issue presented by this appeal, as we perceive it, is whether the trial court erred by concluding, as a matter of law, that the acts and/or omissions alleged by Plaintiffs constitute discretionary functions such that Plaintiffs are barred from seeking damages under the GTLA.

## Standard of Review

Although the County styled its motion alternatively as a motion to dismiss or for summary judgment, it was clearly treated both by the parties and the trial court as one for summary judgment.[3] Our review of a trial court's award of summary judgment is *de novo* with no presumption of correctness. We must "review[] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* (citation omitted). It is well-settled that summary judgment may be granted only if the moving party carries his burden to demonstrate that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted). "The moving party bears the burden of establishing that summary judgment is appropriate as a matter of law, while the court must view the evidence in the light most favorable to the nonmoving party and resolve any genuine issues of material fact in its favor." *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (citation omitted). Because this action was

filed after July 1, 2011, the summary judgment standard set forth in Tennessee Code Annotated § 20–16–101 is applicable to this case. The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.[3]

Tenn. Code Ann. § 20–16–101 (Supp. 2014). The trial court determined that, based on those material facts that were not disputed, the County was entitled to a judgment as a matter of law because Mr. Hardiman's alleged acts, or alleged failure to act, constituted a discretionary function under Tennessee Code Annotated § 29-20-205(1). We accordingly turn to whether the trial court erred by granting summary judgment on this basis.

## Discussion

Governmental entities are immune from actions alleging injury resulting from the exercise or discharge of a governmental function except as provided in the GTLA. Tennessee Code Annotated § 29-20-201(a). The GTLA "permits a suit against a governmental entity when an employee of that entity acting within the scope of his employment negligently causes injury to another." *Giggers v. Memphis Housing Authority*, 363 S.W.3d 500, 507 (Tenn. 2012) (citing Tenn. Code Ann. § 29-20-205).

Under Tennessee Code Annotated § 29-20-205(1), governmental immunity is not removed if the plaintiff's alleged injury results from "[t]he exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]" The underlying "rationale behind this 'discretionary function exception' is to prevent courts from questioning decisions of governmental entities that are primarily legislative or administrative." *Giggers*, 363 S.W.3d at 507. "A governmental entity is immune from suit for actions involving 'planning or policy-making.'" *Id.* (quoting *Helton v. Knox Cnty.*, 922 S.W.2d 877, 885 (Tenn. 1996) (quoting *Bowers v. City of*

---

[3]In its January 2014 judgment, the trial court referenced the Center's staff roster and stated that the "roster indicate[d] that all positions were assigned to an employee except that of a floater in the [Center's] building 2, which is designated as 'collapsed.'" It also stated that it "reviewed the entire record[,]" which we observe contains discovery responses and a number of affidavits.

*Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992)). The governmental entity is not immune if "the act is merely 'operational[.]'" *Id.* (quoting *Helton*, 922 S.W.2d at 885).

A planning decision generally "involves consideration and debate regarding a particular course of action by those charged with formulating plans or policies." *Id.* (citation omitted). It often "requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities." *Id.* (citation omitted). Such "decisions are not subject to tort liability, and a review of these decisions requires judicial restraint." *Id.* (citation omitted).

Operational functions or decisions, on the other hand, "implement 'preexisting laws, regulations, policies, or standards' that are designed to guide the actions of the governmental entity." *Id.* (quoting *Bowers*, 826 S.W.2d at 431). "An operational decision requires that the decision-maker act reasonably when implementing preexisting policy." *Id.* at 507-508 (citation omitted). "[A]n operational decision does not involve the formulation of new policy." *Id.*

When determining whether a decision is discretionary and, therefore, immune from an action under the GTLA, the court must consider:

(1) whether the course of conduct was determined after consideration or debate by an individual or group charged with the formulation of plans or policies;

(2) whether the decision resulted from an assessment of priorities by an individual or group responsible for formulating plans or policies; and

(3) whether the decision is not of the type properly reviewable by courts which are typically ill-equipped to investigate and balance numerous factors that go into executive or legislative decisions.

*Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998). If the court answers these questions in the affirmative, the affirmative answer generally "militate[s] toward a finding that [the] decision was a discretionary function." *Id.* Additionally, "'when the question is not negligence but social wisdom, not due care but political practicability, not [reasonableness] but economic expediency[,]'" it is not the type of decision that is "properly reviewable by the courts." *Id.* (quoting *Peavler v. Bd. of Comm'rs*, 528 N.E.2d 40, 46 (Ind. 1988) (quoting *Blessing v. United States*, 447 F.Supp. 1160, 1170 (E.D. Penn. 1978))). In such cases, "[t]ort law simply furnishes an inadequate crucible for testing the merits of social, political, or economic decisions." *Id.* (quoting *id.*)

Operational decisions, on the other hand, "may be generally classified as ad hoc decisions made by an individual or group not charged with the development of planning or policy decisions that stem from a determination based on preexisting laws, regulations,

policies, or standards." *Id.* "'[T]he discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation.'" *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992) (quoting *Aslakson v. United States*, 790 F.2d 688, 692 (8th Cir. 1986)).

The trial court in this case concluded that the County was immune from suit under the discretionary function exception to the GTLA upon determining that the County's staffing assignments for the Center constitute a discretionary function. In its January 2014 order, the trial court stated:

1. Plaintiffs' amended complaint alleges that supervisory staff at the Shelby County Adult Offender Center (AOC) was negligent in failing to assign adequate staffing at each designated post as necessary to ensure plaintiff's safety and by failing to exercise that degree of care and caution as required of a reasonably prudent person under the same or similar circumstances by responding immediately to Plaintiffs' call for assistance from a supervisor; as required by AOC policies and procedures.

2. Plaintiffs' response to Defendant's Motion to Dismiss and/or for Summary Judgment, attached the staff roster of September 1, 2010.

3. The staff roster indicates that all positions were assigned to an employee except that of a floater post in the AOC building 2, which is designated as "collapsed."

4. Tenn. Code Ann. § 29-20-205(1) states in pertinent part, "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused."

5. Decisions involving scheduling of employees to available posts, and the creation of shift rosters at the AOC, which is part of the Shelby County Division of Corrections, is a discretionary function as contemplated by Tenn. Code Ann. § 29-20-205(1).

6. Shelby County Government is entitled to immunity from suit pursuant to Tenn. Code Ann. § 29-20-205(1).

We begin our review of the trial court's judgment by observing that it based its decision entirely on the fact that the staff roster of September 10, 2010, that was attached

as an exhibit to Plaintiff's response to Defendant's Motion to Dismiss and/or for Summary Judgment, "indicates that all positions were assigned to an employee except that of a floater post in the AOC building 2, which is designated as 'collapsed.[4]'" The trial court then found that decisions related to the staffing roster "involving scheduling of employees to available posts" are a discretionary function "as contemplated by Tenn. Code Ann. §29-20-205(1)." However, the trial court made no findings with respect to whether the decision to "collapse" a position reflects a policy decision made at the administrative/legislative level or an operational decision made by the shift supervisor or some other non-administrative/non-legislative level employee. This unresolved question of fact makes summary judgment inappropriate.

Additionally, the Plaintiffs, in their complaint, did not limit their allegations to questions of staffing. Rather, they asserted that Mr. Hardiman negligently "failed to exercise that degree of care as required … by responding immediately to Plaintiffs' call for assistance from a supervisor; as required by AOC policies and procedures" and "failed to implement Defendant's own directives pertaining to requesting assistance in situations like Plaintiff[s] found themselves in, to wit, calling a 'code red[.]'" The trial court's order does not address whether these two claims were in the nature of planning or operational decisions. Instead, the trial court only determined that "decisions involving scheduling of employees to available posts, and the creation of shift rosters at the AOC" were discretionary functions. Because the trial court did not specifically address Plaintiffs' claims, summary judgment was inappropriate.

In its brief, the County asserts that summary judgment is alternatively appropriate under the reasoning of the Tennessee Supreme Court in *King v. Anderson County*. The County submits, "the attack by [the] inmate . . .was sufficient, by itself, to cause injury to Appellants, the attack was not reasonably foreseeable by Appellee, and there is no nexus between the attack, by a non-violent inmate, and the alleged negligent failure to properly [4]staff, implement policies, or a delayed response time." The County relies on *King* for the proposition that the attack on Plaintiffs was not reasonably foreseeable. [4]

*King v. Anderson County* involved an assault of inmate Kenneth King ("Mr. King") by inmate Brandon Paul ("Mr. Paul"). *King v. Anderson County*, 419 S.W.3d 232 (Tenn. 2013). The appeal in that case, unlike the current appeal, arose from a trial on the merits in which the record contained "no evidence that Anderson County Detention Facility officials knew or should have known that Mr. King would become the victim of

---

[4]Contained in the record is the affidavit of Harvey Tharp ("Mr. Tharp"). Mr. Tharp was employed as a supervisor with the AOC from February 1991 until June 2010. In his affidavit, Mr. Tharp defines the term "collapse" as follows: "The Adult Offender Center was understaffed by two Counselors on September 1, 2010. The Shift Schedule for September 1, 2010 indicates that one post was vacant due to a "post collapse". A "post collapse" indicates a failure to assign a Counselor to the post…"

an attack by his cellmates after he was returned to his cell to await pretrial release." *Id*. at 250. The *King* court noted:

> Mr. King had spent eight hours in the same cell, with the same detainees, during the previous night without incident, even though he had at that time informed his cellmates that drugs had been taken from him by police when he was arrested. He did not report any attempt to search him at that time, nor did Mr. King ever complain to prison authorities that he felt threatened by any of his cellmates. Mr. King's alleged assailant, Mr. Paul, had no record of institutional violence, despite the fact that he had been in custody since July of that year. Although it is understandable that Mr. King would be upset about his delayed release, it was not foreseeable or probable that he would choose to curse or "[go] off" at a cellmate after returning to his cell, especially given his own admission that he had felt "scared" of his fellow inmates upon entering the cell for the first time. As the trial court itself observed, Mr. King was the victim of a "spur of the moment assault" of which no one had any notice. No prison official could have predicted the assault, especially given the lack of any incident or threat during Mr. King's previous night in the same company. Because the record contains no proof that the prison officials knew of or had reason to anticipate an attack on Mr. King, we conclude that the evidence preponderates against the trial court's finding of foreseeability and, therefore, that proximate cause cannot be established in this case.

*Id*. The court held:

> Thus, we must conclude that although the assault upon Mr. King was a possibility, given that penal institutions house dangerous people convicted or charged with crimes, sometimes extremely serious or violent crimes, *the evidence in the record preponderates against the finding that the assault was a reasonably foreseeable probability*, which is the standard for assessing proximate cause necessary to impose liability in a negligence case.

*Id*. (emphasis added). We cannot agree with the County's conclusion that *King* stands for the proposition that the attack of DOC personnel by an inmate, standing alone, is sufficient to break the chain of causation in this case. First, *King* concerned an attack of one inmate by another inmate that occurred after the inmates had shared a cell for more than eight hours. Second, the *King* court reached its conclusion after the facts had been determined by the finder of fact following a trial on the merits. The current appeal arises from an award of summary judgment in which the facts regarding Plaintiffs' allegations of negligence are disputed. Therefore, summary judgment in this case is inappropriate.

8

## Holding

In light of the foregoing, we reverse the trial court's judgment granting the County's motion to dismiss or, in the alternative, motion for summary judgment. Costs on appeal are taxed to the Appellee, Shelby County. This matter is remanded to the trial court for further proceedings that are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE