IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

FILED

July 21, 1998

FOR PUBLICATION

Cecil Crowson, Jr.
Appellate Court Clerk

Filed: July 21, 1998

| | | |
|---|---|---|
| WILLIAM J. CHASE, JR., AS ADMINISTRATOR C.T.A. OF THE ESTATE OF BETTY LOU STIDHAM, DECEASED, | ) ) ) ) | SHELBY CIRCUIT |
| PLAINTIFF/APPELLEE/CROSS-APPELLANT, | ) ) ) | HON. JAMES E. SWEARENGEN, JUDGE |
| v. | ) ) | |
| THE CITY OF MEMPHIS, | ) ) | NO. 02S01-9703-CV-00019 |
| DEFENDANT/APPELLANT/ CROSS-APPELLEE. | ) ) | |

FOR DEFENDANT/APPELLANT/
CROSS-APPELLEE:

Robert M. Fargarson
Martin W. Zummach
Memphis

OF COUNSEL:
Monice Moore Hagler
Memphis

FOR PLAINTIFF/APPELLEE/CROSS-
APPELLANT:

John J. Heflin III
Memphis

FOR INTERVENOR, STATE OF
TENNESSEE:

John Knox Walkup
Attorney General and Reporter

Meredith DeVault
Senior Counsel, Civil Rights and
Claims Division

# O P I N I O N

REVERSED                                                                                          HOLDER, J.

## OPINION

This case involves a tort action against the defendant, City of Memphis, arising out of a woman's death when she was mauled by two pit bull dogs. The Court of Appeals held that the City was immune under the Governmental Tort Liability Act ("GTLA") but removed the immunity pursuant to the common law special duty exception to the public duty doctrine. The issues with which we are now confronted are whether: (1) the City animal shelter's failure to follow-up on an order requiring the owner of the dangerous dogs to enroll his dogs in obedience school was immune under the GTLA as a discretionary act or omission; and (2) whether the public duty doctrine's special duty exception can be employed to remove immunity conferred under the GTLA. We hold that the City's actions or inactions in this case were not immune under the GTLA and that the special duty exception to the public duty doctrine cannot be employed to remove immunity conferred under the GTLA. The decision of the Court of Appeals is reversed.

## FACTS

Betty Lou Stidham died on June 18, 1990, after being mauled to death by two pit bull dogs. The pit bulls were owned by Ms. Stidham's next door neighbor, Edwin Hill. Mr. Hill was a Memphis police officer.

Prior to Stidham's death, Hill's dogs had a previous history of exhibiting violent propensities. In 1987, Edwin Hill went to the emergency room after being bitten on the hand by one of his pit bulls. His hand had to be surgically repaired. In February of 1988, City of Memphis emergency personnel responded to a call from Edwin Hill's residence and found Edwin Hill's mother lying on the floor

2

warding off the pit bulls with a stick. A paramedic attempted to enter the residence to rescue Ms. Hill, but the dogs became menacing toward him. The paramedic then helplessly watched Ms. Hill attempt to ward of an attack for approximately fifteen minutes until officer Edwin Hill arrived and led his dogs into another room. In October of 1988, City police and paramedics were again summoned to the Hill residence where Ms. Hill had again been attacked by the pit bulls. Ms. Hill sustained bites to her face, head and arms and was transported to the hospital. Both the police and the hospital were required to file reports of these attacks with the City of Memphis Animal Shelter.

The record indicates that the previous owner of Ms. Stidham's home, Earl Grochau, had filed several complaints with the Memphis Police Department and the Animal Shelter concerning Edwin Hill's pit bulls. Grochau testified that the dogs caused him to fear for his life. He constructed a six-foot wooden fence between his backyard and Hill's property in an attempt to keep the dogs out of his yard. The dogs, however, burrowed beneath the wooden fence and attempted to attack Grochau's children. Grochau filed complaints with the Memphis Police Department concerning Hill's dogs in 1987 and in 1989.

In late 1989, Edwin Hill was again attacked by one of his pit bulls. The bite caused temporary paralysis. In January of 1990, Hill's pit bulls attacked Ms. Stidham's dog. Ms. Stidham's dog had to have a leg amputated as a result of the attack. Ms. Stidham filed a vicious animal complaint with the Animal Shelter in response to the attack on her dog. The Animal Shelter impounded Hill's pit bulls for an evaluation. One of the pit bulls attempted to attack an Animal Shelter employee during the evaluation period. The Animal Shelter's evaluation of the dogs, however, concluded that neither dog possessed an overtly aggressive behavior.

3

The Animal Shelter conducted a vicious animal hearing on January 23, 1990, to determine whether Hill's dogs were vicious at the time of the attack on Ms. Stidham's dog. While the Animal Shelter is responsible for maintaining all police, fire department and hospital records concerning dog attacks, the shelter did not have the records detailing the pit bulls' prior attacks. Robert Lee conducted the hearing and refused to allow cross-examination of Hill concerning the violent nature of the dogs. Lee opined that the pit bulls did not appear to exhibit a vicious nature toward either humans or animals and found that the dogs were not "vicious" based on the Animal Shelter's evaluation. Lee, however, decided that the dogs were "dangerous" because they were capable of inflicting serious injury.

In January, 1990, Lee issued a letter to Hill declaring the that the pit bulls were dangerous. The letter ordered Hill to correct any fencing deficiencies around his property and ordered Hill to enroll the dogs in a basic obedience training program within ninety days. The letter indicated that failure to comply with the order would result in a declaration that the dogs were vicious and in immediate seizure of the dogs. A copy of the letter was forwarded to Stidham. The pit bulls were released to Hill.

Animal Shelter employees, including Lee, visited Hill's residence on two occasions to inspect the fencing surrounding Hill's property. During one visit, Lee ordered Hill to keep the back gate locked. Lee apparently inquired whether Hill had complied with the obedience school requirement. Hill had not complied but assured Lee that he would enroll the dogs and notify the Animal Shelter when obedience training was complete. Hill, however, never enrolled the dogs, and the Animal Shelter neglected to monitor the situation to assure further compliance. Ms. Stidham was mauled to death by the dogs in June of 1990.

4

The trial court found that the defendant City of Memphis assumed a special duty to Ms. Stidham "to undertake certain acts which would have protected her and her neighbors from the danger the City had notice of . . . presented by Edwin Hill's pit bull dogs." The court found that the City was negligent for failing to follow-up on the obedience training requirement and failing to impound the dogs. The court further found that the vicious dog hearing was improperly conducted. The court held that the City's negligence was the proximate cause of Ms. Stidham's death and that the duty owed was not discretionary under the GTLA. Ms. Stidham's estate received a judgment in the amount of $ 1,897,713.03 for her wrongful death. Forty percent of the fault was assessed to the City of Memphis. The GTLA, however, limited the City's liability to $ 130,000.00 for which judgment was entered.

The City of Memphis appealed the judgment to the Court of Appeals. The appellate court found that the Animal Shelter's negligence in failing to follow-up on its order requiring the defendant to enroll the dogs in obedience school was a discretionary act and that the City was immune from liability under the GTLA. The appellate court, however, then determined that the immunity was removed by application of the "special duty" exception to the public duty doctrine.

We granted review to determine: (1) whether the Animal Shelter's negligence in failing to follow-up on its order requiring Hill to enroll the dogs in obedience school was immune as failure to perform a discretionary function; and (2) whether a governmental act that is immune as discretionary under the GTLA may be subsequently held to be non-immune under the common law "special duty" exception to the public duty doctrine. We hold that the Animal Shelter's actions were operational and were not subject to immunity. We further hold that once an act falls within the purview of the immunity conferred by the GTLA, the

5

act is immune and immunity may not subsequently be removed under a common law public duty doctrine analysis.

## DISCRETIONARY VERSUS OPERATIONAL

Our initial inquiry is whether the Animal Shelter's failure to follow-up on its order was an immune act within the purview of the GTLA. The GTLA is codified at Tenn. Code Ann. § 29-20-205 and provides in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of employment except if the injury:
>
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

Accordingly, the GTLA provides immunity for acts or omissions that are considered discretionary functions.

This Court has previously categorized governmental functions or decisions as either planning or operational under the GTLA. See Bowers v. City of Chattanooga, 826 S.W.2d 427, 430 (Tenn. 1992) (adopting a planning-operational test). Decisions arising to the level of policy-making or planning are considered discretionary acts and are immune under the GTLA. Decisions, however, that are operational in nature are not immune under the GTLA. See id. Factors to be considered in determining whether a decision is discretionary and immune under the GTLA are:

6

(1)  whether the course of conduct was determined after consideration or debate by an individual or group charged with the formulation of plans or policies;

(2)  whether the decision resulted from an assessment of priorities by an individual or group responsible for formulating plans or policies; and

(3)  whether the decision is <u>not</u> of the type properly reviewable by courts which are typically ill-equipped to investigate and balance numerous factors that go into executive or legislative decisions.

Affirmative answers to the above questions militate toward a finding that a decision was a discretionary function.  On the other hand, operational decisions may be generally classified as ad hoc decisions made by an individual or group not charged with the development of planning or policy decisions that stem from a determination based on preexisting laws, regulations, policies, or standards. <u>See</u> <u>Bowers</u>, 826 S.W.2d at 431 (discretionary function exception not applicable to claims that government employees failed to comply with regulations or policies designed to guide their actions).

Lee was an individual charged with formulating plans for the release of potentially dangerous animals.  Lee formulated a plan for the release of Hill's "dangerous" dogs.  Lee ordered Hill to enroll the dogs in obedience school. Lee's order indicated that failure to enroll the dogs or comply with the order would result in immediate seizure of the dogs.  Lee's decision to release the dogs and his subsequent order were <u>not</u> properly reviewable by a court as a court is ill-equipped to investigate and balance the numerous factors that went into Lee's decision to release the dogs.  Lee's letter outlined a formulated policy designed to guide both the Animal Shelter's and Hill's actions following the

7

release of Hill's dogs.  The question then becomes whether the Animal Shelter's failure to follow and enforce its policy formulated to deal with the release of Hill's dogs was a planning or policy-making function and therefore immune under the GTLA.

The Animal Shelter essentially asserts that it failed to follow its formulated plan concerning Hill's dogs' release due to another formulated plan or policy not to impound the dogs because of budgetary constraints and priorities.  The record, however, does not indicate that either Lee or the Animal Shelter made a conscious decision <u>not</u> to pick-up the animals upon Hill's non-compliance or that a policy or procedure was in place to deal with violations of the Animal Shelter's orders.  The record does not indicate whether the Animal Shelter had an established procedure for picking up animals that were both designated as dangerous and released back into society contingent upon an owner's compliance with an Animal Shelter's order.  Upon the expiration of the time within which Hill had to comply with the order, the Animal Shelter did not:  (1) attempt to call Hill to determine whether the order had been complied with; (2) attempt to contact Hill by letter informing him of non-compliance; or (3)  place Hill's dogs on a list for future pick-up.  The Animal Shelter's response was simply "no response."

The conditional release was contingent upon certain requirements.  These requirements were not met.  If the Animal Shelter had a policy in place for picking up animals upon violations of its orders and had it followed this policy, the GTLA would have provided immunity.  A negligent act or omission is operational in nature and not subject to immunity when the act or omission occurs:  (1)  in the absence of a formulated policy guiding the conduct or omission; or  (2)  when the conduct deviates from an established plan or policy.

8

The Animal Shelter's failure to impound the pit bulls fit into the first category and was, therefore, operational in nature. While Courts are ill-equipped to judge the Animal Shelter's prioritizing of the order in which animals shall be impounded, courts are well equipped to evaluate a negligent inaction proximately causing the death of an individual. The City is therefore liable under the GTLA.

## PUBLIC DUTY DOCTRINE/SPECIAL DUTY EXCEPTION

In Ezell v. Cockrell, 902 S.W.2d 394 (Tenn. 1995), this Court held that the common law doctrine of public duty and its exception, the special duty doctrine, survived the enactment of the GTLA. Because the GTLA was not pled as a defense[1] in Ezell, however, this Court declined to address just how the GTLA and the public duty doctrine would apply in cases in which both bases for immunity were alleged.

Both the GTLA and the public duty doctrine are affirmative defenses. Courts first look to the GTLA. If immunity is found under the GTLA, a court need not inquire as to whether the public duty doctrine also provides immunity. If, however, the GTLA does not provide immunity, courts may look to the general rule of immunity under the public duty doctrine. If immunity is then found under the public duty doctrine, the next inquiry is whether the special duty exception removes the immunity afforded under the public duty doctrine. The special duty exception, however, cannot be used to remove immunity afforded by the GTLA. Accordingly, the appellate court erred in using an exception to a common law doctrine to remove immunity conferred by the GTLA. Unlike the appellate court, however, we have found that the defendant's acts are not immune under the

---

[1]The City of Chattanooga filed an amicus curiae brief urging this Court to consider the immunity afforded by the GTLA in its analysis of Ezell. The City of Chattanooga alleged that the officer's decision whether or not to arrest was a discretionary function. Ezell, 902 S.W.2d at 400, f.n. 11.

GTLA. We will now look to see whether the defendant is immune under the public duty doctrine.

In Ezell, this Court recognized that the public duty doctrine shielded public employees from tort liability for injuries caused by a public employee's breach of a duty owed to the public at large. The special duty exception, however, removes the immunity when:

(1) a public official affirmatively undertakes to protect the plaintiff and the plaintiff relies upon the undertaking;

(2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or

(3) a plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

Ezell v. Cockrell, 902 S.W.2d at 402.

Subsection (1) applies to the facts of this case as Robert Lee and the Animal Shelter affirmatively undertook to protect the plaintiff. They issued a letter to Ms. Stidham indicating that any fencing deficiencies would be corrected. The letter further indicated that the dogs would be enrolled into obedience training. The letter indicated that failure to comply with the Animal Shelter's order would result in the animals' immediate seizure. Ms. Stidham did not appeal the order and relied upon the undertaking of Lee and the Shelter to

10

remedy the situation. Accordingly, the special duty exception to the public duty doctrine is applicable to this case, and the City may be held liable for the plaintiff's damages under the GTLA.

## CONCLUSION

The special duty exception to the public duty doctrine is applicable only when immunity has been removed under the GTLA. The special duty exception does not create liability but negates the public duty doctrine, a defense to liability. Accordingly, unless immunity has been removed by the GTLA, a plaintiff cannot recover damages against a government entity even if the special duty exception to the public duty doctrine is applicable.

In the case now before us, the City's actions were not immune under the GTLA, and the public duty doctrine defense was negated by the special duty doctrine. The judgment of the appellate court permitting liability absent a finding that the GTLA removed immunity is reversed. The judgment of the trial court awarding the plaintiff $ 130,000.00 is affirmed in all respects.[2] Costs of this appeal shall be taxed to the defendant, City of Memphis, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[2]The plaintiff advanced a public nuisance theory and argued that sovereign immunity should be judicially abolished. Both issues are without merit.

11

**CONCURRING:**

Anderson, C.J.
Drowota and Birch, J.J.
Reid, Sp. J.

12