FILED
06/28/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 24, 2018 Session

## LaSONYA ROBERTSON v. CLARKSVILLE-MONTGOMERY COUNTY SCHOOL SYSTEM

**Appeal from the Circuit Court for Montgomery County**
**No. 15-CV-1954     Ross H. Hicks, Judge**

_____

### No. M2017-02492-COA-R3-CV

_____

This is a slip-and-fall case. A middle school teacher injured herself when she fell in the hallway outside her classroom on a wet floor. A custodian had been mopping the hallway prior to her fall, and the teacher alleged that the custodians had negligently and misleadingly placed wet-floor signs on the opposite side of the hallway, which did not warn her of the wet floor on her side of the hallway. Thereafter, the teacher brought suit against the school district pursuant to the Tennessee Governmental Tort Liability Act. Following a bench trial, the trial court found the custodians guilty of negligence and assigned seventy-five percent of the fault to the school district and twenty-five percent of the fault to the teacher. A judgment was entered against the school district in the amount of $180,000.00, after reduction for the teacher's comparative fault. The school district appeals, contending (1) that it is immune from suit; (2) that it was not negligent; and (3) that any negligence it may have committed is outweighed by that of the teacher's comparative fault. The teacher argues that the trial court erred in assigning any of the fault to her. We affirm in part and reverse in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, JJ., joined. BRANDON O. GIBSON, J., filed a separate dissenting opinion.

Kathryn W. Olita and Jamie K. Durrett, Clarksville, Tennessee, for the appellant, Clarksville Montgomery County School System.

William L. Aldred, Clarksville, Tennessee, for the appellee, LaSonya Robertson.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On September 29, 2015, Appellee LaSonya Robertson, an employee of the Clarksville-Montgomery County School System ("Appellant") and a teacher at Rossville Middle School, filed a complaint against Appellant to recover damages for personal injuries she sustained when she fell in the hallway outside her classroom at the school on December 12, 2014. Ms. Robertson alleged that Appellant was liable under the Tennessee Governmental Tort Liability Act ("GTLA") because the custodians had negligently mopped the hallway and misleadingly placed two wet-floor signs, and failed to warn her that the entire hallway was wet. *See* Tenn. Code Ann. § 29-20-307.

On November 15, 2015, Appellant answered, denying that the custodians acted negligently. Furthermore, Appellant averred that it was immune under the GTLA. Appellant also argued that the water on the floor was "open and obvious" and asserted comparative fault as a defense.

The trial court conducted a bench trial on August 29, 2017. Ms. Robertson, Norman Mitchell, Janet Willis, and Tommy Butler testified. Mr. Mitchell and Ms. Willis are custodians at the school, and they were present in the hallway when Ms. Robertson fell. Tommy Butler is the safety and health director for the school system. Ms. Robertson's fall was captured on a surveillance video, and the video was made an exhibit at trial. Several photographs taken by Ms. Willis after Ms. Robertson's fall were also introduced into evidence.

Ms. Willis testified that on the day of the fall she had noticed water "tracked" in the hallway on the left side near the lockers, so she asked Mr. Mitchell to assist her in mopping the hallway. Mr. Mitchell testified that on the day of the accident, he had been assisting Ms. Willis because she was unable to mop due to a recent medical procedure. Mr. Mitchell and Ms. Willis testified that they had been trained, pursuant to Appellant's written policy, to place wet-floor signs out whenever the custodians were mopping or noticed liquid on the floor. Mr. Mitchell testified that there was liquid on the floor around an area on the left side of the hallway, so he placed two wet-floor signs out on the left side of the hallway near the liquid and began mopping. Mr. Mitchell testified that he mopped the entire hall, including the right side, which abutted Ms. Robertson's classroom, after he finished mopping the area between the signs where he had seen the spill. However, neither Ms. Willis nor Mr. Mitchell moved the wet-floor signs from the left side of the hallway where the signs were originally placed. Ms. Willis testified that she knew Ms. Robertson was in her classroom because they had spoken in her classroom around the time the hallway was being mopped but neither Ms. Willis nor Mr. Mitchell warned Ms. Robertson that Mr. Mitchell had mopped the entire hallway and not just the area on the left side of the hallway where Mr. Mitchell had placed the signs.

- 2 -

Ms. Robertson testified that on the day of her fall, the students had been released early, but the teachers were expected to stay for the rest of the regular work day. Ms. Robertson testified that shortly after 1:00 P.M., she exited her classroom to make copies for her class and attend a teacher's meeting scheduled to take place at 1:30 P.M., when she immediately slipped on the wet floor in the hallway outside her classroom. Ms. Robertson testified that she was unaware that there was water on the floor until she fell, and she was unable to see into the hallway from where she had been working at her desk. Ms. Robertson testified that she was not in a hurry, and she did not see the wet-floor signs.

Mr. Butler testified that the custodians attended an annual training session in which they were provided with a power-point presentation containing Appellant's wet-floor sign policy. Mr. Butler testified that custodians are required to put out wet-floor signs anytime they mop to "make the workplace and school environment as safe as [they] possibly can for staff, students, and visitors." Mr. Butler opined that the custodians in this case took reasonable steps to warn of the liquid on the floor in compliance with the written policy.

On November 15, 2017, the trial court issued a Memorandum Opinion setting out its findings of fact and conclusions of law. The trial court found that the custodians did not place the wet-floor signs in such a way as to give Ms. Robertson adequate warning "that mopping had taken place or that the floor was wet in the area where she fell, particularly since the custodial staff knew that she was still in her classroom and had the opportunity to warn her orally but failed to do so." The trial court went on to make the following findings:

> The placement of the signs in the small area on the left side of the hallway near the lockers and the entrance door to the other classroom would have been adequate to warn of a wet floor or mopping in that small immediate area. The Court finds that it was inadequate to warn Ms. Robertson or others that the center and right side of the hallway and the area immediately outside Ms. Robertson's classroom were wet or had been mopped and did not conform to the requirements set forth in the school system's policies.

The trial court concluded that the custodians failed to properly implement the "wet floor sign policy," and "the placement of the signs was misleading and did not adequately warn Ms. Robertson that the right hand side of the hallway where she fell was wet." Therefore, the trial court found that Appellant was not immune under the GTLA. The trial court then held that the custodians were seventy-five percent negligent, but the court attributed twenty-five percent of the fault for the accident to Ms. Robertson because she was "negligent in failing to see the sign directly in front of her." The trial court entered a final judgment incorporating by reference its Memorandum Opinion and awarding Ms.

Robertson a judgment for $180,000.00, after reduction for her percentage of comparative fault. Appellant timely appealed.

## ISSUES PRESENTED

Appellant has raised the following issues for review, which we have rephrased as follows:

- Whether the trial court committed reversible error in concluding that Appellant's immunity under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated section 29-20-201 had been removed.

- Whether the evidence supports the trial court's conclusion that the custodians were negligent.

- Whether the evidence preponderates against the trial court's conclusion that the custodians' negligence exceeded the alleged negligence of Ms. Robertson.

Appellee has raised the following issue for review:

- Whether the trial court erred in failing to allocate one hundred percent of the fault for the accident to Appellant.

## STANDARD OF REVIEW

This is a non-jury case and, as such, is subject to our *de novo* review upon the record of the proceedings below. We presume that the trial court's findings of fact are correct, and we must honor that presumption unless the evidence preponderates to the contrary. Tenn. R. App. P. 13; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). There is no presumption as to the correctness of the trial court's conclusions of law. *See Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). As this is a case involving comparative fault, it is important to note that the assessment of the parties' relative fault is one of fact, carrying the aforementioned presumption of correctness. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Our *de novo* review is subject to the well-established principle that the trial court, having seen and heard the witnesses testify, is in the best position to judge their credibility. *See Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). Great deference must be shown to the trial court's credibility determinations. *Id.*

DISCUSSION

**I.**

Our initial inquiry requires us to determine whether the allegedly negligent act or omission is an immune act within the purview of the GTLA. Governmental entities are immune from suit, except when immunity has been removed by statute. *See* Tenn. Code Ann. § 29-20-201. In cases brought pursuant to the GTLA, "[b]efore proceeding in an action against a governmental entity, the threshold issue of waiver of governmental immunity must be addressed." *Brown v. Hamilton Cty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003). Relevant to this case, Tennessee Code Annotated section 29-20-205 provides, in relevant portion, as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> > (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;

The GTLA does not define the term "discretionary function," but in *Bowers v. City of Chattanooga*, our Supreme Court adopted the planning-operational test to assist courts in analyzing whether the allegedly negligent act or omission was discretionary. *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430–31 (Tenn. 1992). Under the planning-operational test, courts must distinguish governmental acts that are performed at the "planning" level from those performed at the "operational" level:

> [D]ecisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Id*. at 430. "Essentially, the discretionary function exception prevents the use of tort actions to second-guess what are essentially legislative or administrative decisions involving social, political, economic, scientific, or professional policies or some mixture of these policies." *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 85 (Tenn. 2001). Factors to be considered in determining whether a decision is discretionary include:

> (1) whether the course of conduct was determined after consideration or debate by an individual or group charged with formulation of plans or policies;
>
> (2) whether the decision resulted from an assessment of priorities by an individual or group responsible for formulating plans or policies; and

(3) whether the decision is not of the type properly reviewable by courts which are typically ill-equipped to investigate and balance numerous factors that go into executive or legislative decision making.

*Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998). In *Chase v. City of Memphis*, our Supreme Court explained:

Affirmative answers to the above questions militate toward a finding that a decision was a discretionary function. On the other hand, operational decisions may be generally classified as *ad hoc* decisions made by an individual or group not charged with the development of planning or policy decisions that stem from a determination based on preexisting laws, regulations, policies, or standards.

*Id*. A negligent act or omission is operational in nature and not subject to immunity when the act or omission occurs: (1) in the absence of a formulated policy guiding the conduct or omission; or (2) when the conduct deviates from an established plan or policy. *Id*.

The trial court concluded that the custodians failed to reasonably comply with Appellant's written "mopping" policy by placing the wet-floor signs in a misleading way. Specifically, the trial court found that the policy was not reasonably and appropriately implemented such that a reasonable observer would understand that her side of the hallway was also wet. The trial court stated:

The placement of the signs in the small area on the left side of the hallway near the lockers and the entrance door to the other classroom would have been adequate to warn of a wet floor or mopping in that small immediate area. The Court finds that it was inadequate to warn Ms. Robertson or others that the center and right side of the hallway and the area immediately outside Ms. Robertson's classroom were wet or had been mopped and did not conform to the requirements set forth in the school system's policies.

Therefore, the trial court concluded that immunity was abrogated.

Appellant avers that the custodians were trained pursuant to Appellant's written policy to put out wet-floor signs when mopping, and the custodians reasonably complied with the policy in this case. In support of its argument, Appellant points out that the custodians put out two wet-floor signs, and Mr. Butler testified that the custodians reasonably followed the policy.

Having carefully reviewed the record, we agree with the trial court that Appellant is not immune from suit because the decision of where to place the wet-floor signs was operational in nature. *See, e.g., Bowers*, 826 S.W.2d at 432 (holding that the decision

made by a bus driver concerning where on the street to stop the school bus was an operational decision when the bus driver was directed to stop anywhere near a daycare). The failure of the custodians to warn Ms. Robertson or place the wet-floor signs in the area around where Ms. Robertson fell cannot be characterized as a planning decision reflecting a course of conduct by those in charge of formulating the policy. Therefore, we hold that the discretionary/planning function exception to the removal of immunity does not apply to shield the actions of the custodians in this case.

## II.

Next, we must consider whether the record supports the trial court's conclusion that the custodians acted negligently in causing Ms. Robertson's fall. Appellant claims that the custodians acted reasonably under the circumstances, and their actions did not constitute negligence. Furthermore, Appellant avers that the trial court erred by concluding that Ms. Robertson's negligence was less than the custodians' negligence. *See, e.g., McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) ("[S]o long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.").

Negligence cannot be presumed by the mere happening of an accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). "'[P]eople fall all the time[,] but this does not perforce mean that the fall was due to another's negligence[.]'" *Mooney v. Genuine Parts Co.*, No. W2015-02080-COA-R3-CV, 2016 WL 2859149, at *3 (Tenn. Ct. App. Apr. 20, 2016) (citation omitted). "In a premises liability action against a governmental entity, the plaintiff must prove that: (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached either its duty to eliminate the condition or its duty to warn of the condition." *Traylor ex rel. Traylor v. Shelby Cty. Bd. of Educ.*, No. W2013-00836-COA-R3-CV, 2014 WL 792131, at *8 (Tenn. Ct. App. Feb. 27, 2014) (citations omitted). We have described the duty of care owed to an employee by her employer as follows:

> The master owes the duty of ordinary care to prevent injury to the servant in the work place, and he is bound to use such care to furnish the servant a reasonably safe place and safe appliances for the work. This duty of the master is personal, continuous, and non-delegable.

*Overstreet v. Norman*, 314 S.W.2d 47, 50 (Tenn. Ct. App. 1958) (citations omitted).[1]

---

[1] As was the case in *Overstreet v. Norman*, the instant action does not fall under the worker's

The first three elements are not in dispute in this case. However, Appellant claims that the custodians' conduct with respect to the placement of the wet-floor signs was reasonable under the circumstances and, hence, did not constitute negligence. The evidence simply does not support Appellant's contention. On the surveillance video, Mr. Mitchell can be seen placing two wet-floor signs around a relatively small area on the far left side of the hallway right in front of a row of lockers. He begins by mopping the area in between the signs, but then he mops the entire length of the hallway along the right and left sides. However, Mr. Mitchell did not move the wet-floor signs to indicate that a much larger area had been mopped. Furthermore, Ms. Willis was watching Mr. Mitchell while he mopped the hall, but she was not assisting him because of a recent surgery. Ms. Willis testified that she knew Ms. Robertson was in her classroom because she spoke with Ms. Robertson in her classroom around the time that the hallway was being mopped. Mr. Mitchell also testified that he knew people were still in the building. However, neither Ms. Willis nor Mr. Mitchell warned Ms. Robertson that the right hallway directly outside her classroom was wet from being mopped.

Moreover, Ms. Robertson testified that she did not see the wet-floor signs before she fell, and she fell almost immediately after she stepped into the hall. The following exchange occurred when Ms. Robertson was being cross-examined:

Q: [S]o what prevented you from seeing those wet floor signs on that day?

A: I can't say what prevented me from seeing them. I just don't remember seeing any signs. Like I said, when I came out of my classroom, as soon as I turned the corner, I was falling to the floor. If I had seen that first sign in front of Ms. Averritt's door [i.e. the door across the hall], it would have indicated to me that that area in front of her door was wet—had a spill or something was wet there.

Q: Okay.

A: It wouldn't have indicated to me that where I was walking was wet.

Q: And so after you proceeded into the hall then and if you had seen the second sign, would that have indicted to you then that that area of the floor was wet.

A: The area on that side of the hallway. It would have indicated to me that that must be wet on that side of the hallway.

compensation statutory scheme but rather is controlled by general principles of negligence and the GTLA. *See Overstreet*, 314 S.W.2d at 49.

The trial court found that Ms. Robertson was a credible witness, and she "was not distracted, was walking normally and was otherwise using reasonable care for her own safety and making responsible use of her senses" when she entered the hallway. Our review of the video that was an exhibit at trial and included in the record on appeal also demonstrates that Ms. Robertson fell less than two seconds after exiting her classroom. The evidence clearly supports the trial court's conclusion that the custodians were negligent in their placement of the wet-floor signs and in mopping the entire hall without warning Ms. Robertson or moving the signs. For the foregoing reasons, we have concluded that the evidence in the record supports the trial court's conclusion that the custodians were negligent.

Next, Appellant argues that even if the custodians were negligent, Ms. Robertson's negligence was equal to or exceeded the custodians' negligence. Therefore, Appellant avers, Ms. Robertson's recovery is barred under the doctrine of comparative fault. *See McIntyre*, 833 S.W.2d at 53. Conversely, Ms. Robertson avers that the trial court erred in attributing any of the fault to her, and she should be awarded additional damages.

In attributing seventy-five percent of the fault and twenty-five percent of the fault to Appellant and Ms. Robertson respectively, the trial court explained its reasoning as follows:

> The Court further finds that the school system breached its duty to warn of the dangerous condition which it created because the wet floor signs were placed in a manner which did not adequately warn Ms. Robertson of the danger she confronted. The Court also finds that the Plaintiff was also partially at fault in that she failed to notice a sign that was directly across from her classroom entrance on the opposite of the hallway. **Although, as previously stated, the placement of the sign was such that it would lead any reasonable observer to think that it was warning of a wet floor area across the hallway from where Ms. Robertson was walking, her testimony was that she did not see the sign at all. The Plaintiff had a duty to use reasonable care for her own safety and the Court finds that she was negligent in failing to see the sign directly in front of her.**

(emphasis added).

We respectfully disagree with the trial court's decision to attribute twenty-five percent of the fault to Ms. Robertson. "The comparative fault analysis must take into consideration the total context of the injury-causing incident[.]" *Keaton v. Hancock Cty. Bd. of Educ.*, 119 S.W.3d 218, 225 (Tenn. Ct. App. 2003). "One of the factors courts must consider in assessing comparative negligence is 'the reasonableness of the party's conduct in confronting a risk.'" *Cannon v. Loudon Cty.*, 199 S.W.3d 239, 244 (Tenn. Ct. App. 2005). "In making this determination, our courts have properly taken into

consideration whether, and to what extent, encountering a known risk is avoidable; or, stated another way, what reasonable alternatives to encountering a known risk are available to a party." *Id*. In attributing the percentage of fault assigned to each party, a trial court may also consider the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid harm to the plaintiff. *Eaton v. McClain*, 891 S.W.2d 587, 592 (Tenn. 1994).

In this case, the trial court found that the placement of the wet-floor signs was misleading because "the placement of the sign[s] was such that it would lead any reasonable observer to think that it was warning of a wet-floor area across the hallway from where Ms. Robertson was walking." Even though the trial court concluded that the positioning of the signs would have misled any "reasonable observer," the court attributed twenty-five percent of the fault to Ms. Robertson for failing to see the sign. It seems inconsistent to fault Ms. Robertson for failing to notice the sign on the opposite side of the hallway in light of the trial court's finding that the sign would not have served as an adequate warning even if she had seen it. Moreover, we point out again that Ms. Robertson fell almost instantaneously upon exiting her classroom, and the trial court found explicitly that Ms. Robertson "was not distracted, was walking normally and was otherwise using reasonable care for her own safety and making responsible use of her senses" when she entered the hallway. There is no proof in the record to support a finding by the trial court that Ms. Robertson in any way caused or contributed to her injuries.

This Court confronted similar facts in *Cannon v. Loudon County*, 199 S.W.3d 239, 240 (Tenn. Ct. App. 2005). In *Cannon v. Loudon County*, the roof of a jail leaked and puddles of water accumulated on the floor. *Id*. The plaintiff got out of bed to use the restroom in the night, and he slipped while attempting to traverse the wet floor, which constituted the only path leading to the restroom. *Id*. at 243–44. The trial court found that each party was fifty percent at fault for the plaintiff's injuries and dismissed the case. *Id*. at 240. However, on appeal, this Court attributed one hundred percent of the fault to the jail personnel for failing to maintain the premises in a reasonably safe manner. *Id*. at 245. This Court considered factors such as the inmate's inability to avoid the water and the reasonable need to use the restroom in the night when allocating one hundred percent of the fault to the jail. *Id*. at 245.

Similarly, in the case before us, Ms. Robertson acted reasonably in walking out of her classroom to attend an afternoon meeting with the other teachers. For the foregoing reasons, we hold that the evidence preponderates in favor of the conclusion that the plaintiff should not be held at fault. "While the trier of fact has considerable latitude in allocating percentages of fault, appellate courts have the power to reallocate fault when the evidence preponderates against the trial court's fault-finding." *Id*. (citations omitted). Accordingly, we reverse the trial court's finding that Ms. Robertson was twenty-five percent at fault for her injuries and hold that Appellant was one hundred percent at fault.

- 10 -

## CONCLUSION

For the foregoing reasons, we affirm the trial court's conclusion that Appellant is not entitled to immunity under the GTLA and that the custodians were negligent. However, we reverse the trial court's decision to allocate twenty-five percent of the fault to Ms. Robertson and remand the case for the trial court to enter a judgment for the total amount of damages to which the trial court found the Appellant to be entitled and for such further proceedings as are necessary and consistent with this Opinion.

_____

ARNOLD B. GOLDIN, JUDGE