IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2020 Session

## RYAN KIMBLE v. DYER COUNTY TENNESSEE ET AL.

**Appeal from the Circuit Court for Dyer County**
**No. 2019-CV-36      R. Lee Moore, Jr., Judge**

———————————————————

**No. W2019-02042-COA-R3-CV**

———————————————————

The trial court dismissed plaintiff/Appellant's Governmental Tort Liability action against the county and an unknown deputy.   The trial court determined that Appellant's lawsuit was barred by the Public Duty Doctrine.   Because Appellant has not pled facts sufficient to establish a special duty exception to the Public Duty Doctrine, we affirm the trial court's dismissal of the lawsuit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Barbara A. Deere, Dyersburg, Tennessee, for the appellant, Ryan Kimble.

James I. Pentecost and Haynes T. Russell, Jackson, Tennessee, for the appellees, Dyer County, Tennessee, and Dyer County Sheriff.

### OPINION

### I. Background

On April 3, 2018, Appellant Ryan Kimble was traveling west on Highway 104 East, coming into Dyer County.   The weather was extremely bad that evening. Unbeknownst to Mr. Kimble, a tree had fallen across Highway 104 and was blocking the entire west lane.   Mr. Kimble's vehicle collided with the downed tree, and he sustained numerous injuries.

On April 3, 2019, Mr. Kimble filed suit against Dyer County, Dyer County Sheriff Jeff Box, and Deputy John Doe (together, "Appellees"). The complaint states, in relevant part:

8. The Dyer County TN Sheriff's office was previously notified of the dangerous condition created by the tree falling onto and across the highway. Deputy John Doe had actual notice and was guarding the hazardous situation just before the tragic accident by Kimble occurred.

9. Deputy John Doe had the duty to protect and the ability to prevent the accident by Ryan Kimble: Deputy John Doe, who was guarding the scene, left the scene without leaving any sign or signal of a hazardous situation for Ryan Kimble or other travelers on this highway. . . .

10. Deputy John Doe's actions of leaving the scene without warning others of the dangerous situation was the direct and proximate cause of the injuries and damages suffered by Ryan Kimble hitting the fallen tree over the highway.

11. Deputy Doe's actions of leaving an unguarded, dangerous roadway hazard was reckless, negligent and intentional and rises to the level of gross negligence. Thes[e] violations directly and proximately caused the injuries and damages of Ryan Kimble on April 3, 2018.

12. Deputy Doe's actions of leaving an unguarded, dangerous roadway hazard, was intentional as he chose to leave this situation and go to another without protecting the wellbeing of those traveling on this roadway. This violation directly and proximately caused the injuries and damages of Ryan Kimble on April 3, 2018.

13. Doe's action of leaving an unguarded, dangerous roadway hazard was a violation of the common laws of the State of Tennessee as it was reckless performance of duty to render aid to another in distress; he could have and should have prevented the hazard. In fact it could be said his inaction was reckless. He failed to regard the safety and rights of others and committed an emergent situation from which Ryan Kimble could not escape. Deputy Doe violated the common law duties of care. The common law negligence actions of Deputy John Doe directly and proximately caused the injuries and damages of Ryan Kimble on April 3, 2018.

***

15. Deputy John Doe was on the job, in the course and scope of the job, performing the duties of a deputy sheriff for the Dyer County, TN Sheriff's department when these negligent, gross negligent and intentional actions on his part occurred on Highway 104 E, Dyer County TN on April 3, 2018. Sheriff Jeff Box is vicariously liable for the actions of Deputy John Doe and should be held vicariously responsible for the damages occurring as a

result of Doe's employment relationship with Sheriff Jeff Box.

16. Dyer County, TN is a duly organized and functioning governmental entity and county in the State of Tennessee, was the employer of Deputy John Doe and Sheriff Jeff Box and should be held vicariously liable for the actions of Box and his employee Deputy John Doe's actions.

17. Deputy John Doe's actions/inactions caused the injuries of Ryan Kimble on April 3, 2018.

On June 19, 2019, Appellees filed a joint Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the complaint for failure to state a claim. In support of their motion, Appellees cited section 29-20-203 of the Tennessee Governmental Tort Liability Act ("GTLA"), arguing that the "accident occurred on a state-owned highway, namely, State Highway 104. As such, it is clear the county neither owns nor controls the state highway and its right-of-way, which is a necessary predicate to remove immunity under Section 203." Appellees also asserted that Mr. Kimble failed to state a claim against Deputy John Doe under section 29-20-205 of the GTLA. Specifically, Appellees argued that Deputy John Doe did not commit negligence under a premises liability theory and again argued that Appellees had no ownership in the highway and, therefore, no duty. Finally, Appellees asserted that if they were not immune from liability under the GTLA, then they were shielded from liability under the Public Duty Doctrine. Specifically, Appellees maintained that there was no special duty owed by Deputy John Doe to Mr. Kimble and, thus, no exception to the Public Duty Doctrine.

On September 30, 2019, the trial court heard the motion to dismiss. By order of October 3, 2019, the trial court granted Appellees' motion and dismissed Mr. Kimble's lawsuit. In relevant part, the October 3, 2019 order states:

> The plaintiff argues that the defendants owed a special duty to the plaintiff to create an exception to the Public Duty Doctrine. . . . However, in the case at bar, the plaintiff does not allege any special duty owed to the plaintiff. The allegations in the complaint are taken as being true for the purposes of a Rule 12 Motion to Dismiss, there still does not appear to have [been] alleged any special duty owed to Mr. Kimble that would negate this defense.
>
> Highway 104 is a state highway. This highway is not owned or controlled by Dyer County and there is no allegation in the complaint that the County of Dyer either owns or is responsible for maintaining this highway. Consequently, immunity is not removed under T.C.A. §29-20-203. . . . If the defendants are not immune from liability by T.C.A. § 29-20-203, the Court finds that the defendants are shielded from liability under the Public [Duty] Doctrine. . . . In this case, the complaint alleges that a Deputy Sheriff for Dyer County came upon State Highway 104 where a tree had fallen across the road, and that he received a call indicating that

- 3 -

another tree had fallen across a road. The complaint alleges that he left this scene and went to correct another scene where something had fallen across a road. According to the allegations in the complaint, this incident was in the middle of a storm. Requiring an officer or sheriff's department to be responsible for civil liability due to an oversight or omission of an officer places the official in the untenable position of insuring the personal safety of every member of the public, or facing civil suit for damages. The Public Duty Doctrine eliminates this dilemma. *Ezell v. Cockrell*. 902 S.W. 2d 394. . . . The Court, therefore, finds that the complaint fails to state a claim upon which relief can be granted under T.C.A. § 29-20-203. The Court also finds that if there is no immunity under T.C.A. § 29-20-203, the Public Duty Doctrine is applicable.

Mr. Kimble appeals.

## II. Issues

Mr. Kimble raises two issues for review as stated in his brief:

I. Whether the trial court erred in dismissing the case in favor of Defendants the County of Dyer, Tennessee; Dyer County Sheriff, Jeff Box; and an Unknown Deputy, John Doe, based upon the finding that the complaint fails to state a claim upon which relief can be granted under T.C.A. § 29-20-203.

II. Alternatively whether the Judge erred in dismissing the case in favor of Defendants the County of Dyer, Tennessee; Dyer County Sheriff, Jeff Box; and an Unknown Deputy, John Doe, because he found that if there is no immunity under T.C.A § 29-20-203, the Public Duty Doctrine is applicable.

Concerning issue one, at oral argument before this Court, Mr. Kimble's attorney conceded that Highway 104 is neither owned nor controlled by Dyer County. She explained that Mr. Kimble "d[id] no[t] argue that the tree was the cause of this [accident]. [Mr. Kimble] argue[d] that the cause of the accident was the fact that the deputy took control of the situation and then left without warning anyone on the highway [of the tree across the road]." As such, Mr. Kimble's attorney acknowledged that he was not alleging a cause of action under Tennessee Code Annotated section 29-20-203 of the GTLA, i.e., "Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street . . . or highway, owned and controlled by such governmental entity." Therefore, we will consider issue one, *supra*, waived and will not address the trial court's reliance on Tennessee Code Annotated section 29-20-203 in granting Appellees' motion to dismiss. Rather, we will focus our analysis on the trial court's conclusion that the Public Duty Doctrine applies to bar Mr.

Kimble's claim of negligence on the part of Deputy John Doe and any vicarious liability on the part of his employers, Dyer County and/or the Dyer County Sheriff, Jeff Box.

## III. Standard of Review

The resolution of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing *Trau-Med.*, 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see also Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo with no presumption that the trial court's decision was correct. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 429 (Tenn. 2011).

## IV. Analysis

Tennessee Code Annotated section 29-20-205 of the GTLA provides, in relevant part, that

> [i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

It is well-settled that an act or omission is considered operational and immunity is removed either when: (1) the conduct occurs in the absence of a formulated policy guiding the conduct or omission; or (2) when the conduct deviates from an established plan or policy. *Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998); *Matthews v. Pickett County*, 996 S.W.2d 162, 164 (Tenn. 1999). Taking the factual averments in Mr. Kimble's complaint as true and giving all reasonable inference in his favor, we infer that Deputy John Doe's actions fall under the umbrella of operational duties (as opposed

- 5 -

to discretionary duties) and that immunity is removed under the GTLA. That being said, in ***Ezell v. Cockrell***, 902 S.W.2d 394 (Tenn. 1995), the Tennessee Supreme Court held that the common law doctrine of public duty and its exception, the special duty doctrine, survive the enactment of the GTLA. *Id.*; ***Chase***, 971 S.W.2d at 385 ("The special duty exception to the public duty doctrine is applicable only when immunity has been removed under the GTLA. The special duty exception does not create liability but negates the Public Duty Doctrine, a defense to liability. Accordingly, unless immunity has been removed by the GTLA, a plaintiff cannot recover damages against a government entity even if the special duty exception to the Public Duty Doctrine is applicable.").

The ***Ezell*** Court explained that the Public Duty Doctrine is a common law defense that shields public employees from suits for injuries that are caused by the employee's breach of a duty owed to the public at large rather than to the individual plaintiff, and it likewise shields local governmental entities from such liability. *Id.* at 397. If the GTLA removes immunity, then the common law rule of immunity under the Public Duty Doctrine provides an additional layer of defense and is the next level of inquiry for the court. However, the ***Ezell*** Court recognized an exception to the immunity enjoyed by local governmental entities under the Public Duty Doctrine. This exception arises where a special relationship between the plaintiff and the public employee creates a special duty that is more specific to the plaintiff than the duty owed by the employee to the public at large. *Id.* at 401. Specifically, the Court stated that

> a special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402. Here, Mr. Kimble relies on the first and third exceptions to the Public Duty Doctrine, i.e., that a special duty of care was established either by Deputy John Doe's "affirmatively undertaking to protect [Mr. Kimble]," or by Deputy John Doe's "reckless misconduct" in abandoning the scene of the accident without providing any warning of the downed tree. We will address both exceptions.

Concerning the first special duty exception to the Public Duty Doctrine, we find guidance from the ***Ezell*** case. In that case, the plaintiff, who was injured in an accident caused by a drunk driver, brought suit against a city government, alleging that the driver had been allowed to drive by the city's police chief when he knew or should have known the driver was intoxicated. The police chief had prevented an obviously intoxicated woman from driving home from a bar, but the officer allowed her friend to drive her home. Approximately one hour later, the driver, with his lights off and on the wrong side

of the road, crashed head-on into the car where the plaintiff and her husband, who was killed in the accident, were riding. The plaintiff alleged that the police chief breached a duty to the plaintiff when he failed to arrest the driver for public intoxication or driving under the influence. *Ezell*, 902 S.W.2d at 396-97. Despite the Supreme Court's recognition of the special duty exception to the Public Duty Doctrine, the Court concluded that the exception did not apply in *Ezell*. Regarding the first special duty exception, the court explained that:

> The plaintiff's allegations do not support application of a "special-duty" of care. Neither [the police chief] nor the City of Elkton had, by their actions, affirmatively undertaken to protect the plaintiff. In fact, [the police chief] never had any contact with the plaintiff; thus, the defendants had taken no action which would have caused the plaintiff to particularly rely upon them for protection.

*Ezell*, 902 S.W.2d at 403. The same is true here. It is clear from Mr. Kimble's complaint that he never had any contact with Deputy John Doe. Rather, Mr. Kimble avers that Deputy John Doe was negligent when he "left the scene without leaving any sign or signal of a hazardous situation for Ryan Kimble **or other travelers** on this highway. He left . . . without leaving any person or object to warn **on-coming travelers** of the tree." (Emphases added). "Cases applying the Public Duty Doctrine make clear that whether a special duty arose under Tennessee law does not simply turn on whether the defendant might have had reason to know that someone was in danger under the circumstances." *Karnes v. Madison County*, No. W2009-02476-COA-R3-CV, 2010 WL 3716458, *4 (Tenn. Ct. App. Sept. 23, 2010). For example, in *Wells v. Hamblen County*, No. E2004-01968-COA-R3-CV, 2005 WL 2007197 (Tenn. Ct. App. Aug. 22, 2005), *perm. app. denied* (Tenn. Dec. 19, 2005), following a domestic dispute between the plaintiff and the father of her child, plaintiff asked the responding Hamblen County sheriff's deputy to go to father's residence to get the child because she feared for the child's safety. *Id.* at *1. The deputy told the plaintiff not to worry and opined, based on his experience, that father would not harm the child. *Id.* The deputy told plaintiff that he would obtain a warrant to retrieve the child and would serve it the following morning. Unfortunately, the father murdered the child before the deputy acted. *Id.* at *2. Plaintiff sued the county based on the deputy's handling of the matter. *Id.* at *1. This Court held "that [plaintiff] has not alleged facts that would support the application of the special duty exception. The complaint does not include any allegation of any action that [the deputy] affirmatively undertook to protect [the child]." *Id.* at *8; *see also Lynch ex rel. Hayes v. Loudon Co.*, No. E2013-00454-COA-R3-CV, 2013 WL 6667706 (Tenn. Ct. App. Dec. 17, 2013), *perm. app. denied* (Tenn. May 15, 2014).

Similarly, in *Hurd v. Woolfork*, a man had been charged with aggravated rape, and an arrest warrant was subsequently issued due to his violation of the terms of his probation. *Hurd v. Woolfork*, 959 S.W.2d 578, 580 (Tenn. Ct. App. 1997), *perm. app.*

*denied* (Tenn. Dec. 8, 1997). Neighbors complained to the Madison County Sheriff's Department that the man had engaged in a "continuing course of conduct that threatened the members of the neighborhood in which [he] resided." *Id.* Despite the complaints, the sheriff's department still had not executed the warrant after ten days, and the suspect brutally murdered two of his neighbors. *Id.* This Court concluded that the Public Duty Doctrine precluded liability because none of the three exceptions listed in *Ezell* were present. *Id*. at 583. Despite the neighbors' complaints, the sheriff's duty to keep the peace and to execute arrest warrants was "a public duty, 'not owed to any individual in particular.'" *Id.* at 581 (quoting *Ezell*, 902 S.W.2d at 397).

In *Hurd v. Flores*, 221, S.W.3d 14 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Nov. 6, 2006), plaintiffs argued that a deputy had a duty to prevent their daughter from using an emergency interstate crossover drive in violation of state law. *Id.* at 28. The deputy was following their daughter but did not attempt to prevent her from using the crossover, and she was killed when she pulled her vehicle into oncoming traffic. *Id.* at 19. Nevertheless, the public duty doctrine applied because the deputy's refusal to enforce the applicable law was a duty owed to the public in general, not to the plaintiff's daughter, and the circumstances giving rise to the special duty exception did not apply. *Id.* at 28-29. Stated another way, "a duty owed to everyone is a duty owed to no one." *Brown v. Hamilton Co.*, 126 S.W.3d 43, 48 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. Jan. 6, 2004).

As in the foregoing cases, here, Mr. Kimble's complaint does not set out facts from which one could infer that Deputy John Doe "affirmatively undert[ook] to protect" Mr. Kimble. If Deputy John Doe owed a duty of care, that duty was to the public at large. Although Mr. Kimble would be included as a member of the public, such duty would not be specific to him, but would extend, as the complaint states, to "other travelers," or "on-coming travelers." Furthermore, there is no indication that Mr. Kimble relied on anything that Deputy John Doe did or said. As noted above, there was never any contact between Mr. Kimble and Deputy John Doe. As such, we conclude that Mr. Kimble's pleadings are insufficient to satisfy the first exception to the Public Duty Doctrine.

Turning to the third special duty exception to the Public Duty Doctrine, i.e., that Deputy John Doe engaged in reckless misconduct, as set out in context above, in his complaint, Mr. Kimble avers that Deputy Doe's "actions of leaving an unguarded, dangerous roadway hazard was reckless . . . , [i.e.,] was [a] reckless performance of duty to render aid to another in distress." Mr. Kimble further avers that Deputy John Doe's "inaction was reckless." Although Mr. Kimble characterizes Deputy John Doe's action/inaction as reckless, this is a legal conclusion. As such, we are not constrained to accept or infer that Deputy Doe's conduct was, in fact, reckless; rather, the facts set out in the complaint must show a level of culpability beyond mere negligence. As explained in *Hurd v. Woolfork*,

It is true that both Plaintiffs' complaints allege that Sheriff Woolfork "engaged in extremely reckless conduct" by failing to promptly process the warrant for Morris's arrest. The allegation that Sheriff Woolfork engaged in "reckless" conduct, however, is a legal conclusion. *See Sheiman v. Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 492 A.2d 219, 223 (1985) (concluding that mere use of word "reckless" in complaint is insufficient to raise actionable claim because allegation of reckless conduct is conclusion of law) . . . . In ruling on the Defendants' motions to dismiss, the trial court, and this court on appeal, are not required to accept such legal conclusions as true. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997). Only the complaints' factual allegations must be accepted as true. *Id.* The only alleged factual basis for the Plaintiffs' claims of reckless conduct is that Sheriff Woolfork was "devoting his time and attention to the political aspects of his elected position rather [than] to fulfilling the duties statutorily imposed upon him by T.C.A. § 8-8-201." At most, these factual allegations establish simple negligence. *Ezell*, 902 S.W.2d at 403.

959 S.W.2d at 584.

Similarly, in *Kemper v. Baker*, No. M2011-00407-COA-R3-CV, 2012 WL 1388371 (Tenn. Ct. App. April 19, 2012), this Court affirmed the trial court's dismissal of plaintiffs' GTLA action against a city and city official. *Id.* at *1. The *Kemper* plaintiffs were employed by a private company that was disconnecting utilities on a privately owned building that was scheduled for demolition. *Id.* While performing their jobs, one plaintiff was killed and the other seriously injured when an exterior wall of a building collapsed. *Id.* The plaintiffs claimed that the collapse was caused, in part, by the failure of the city and the city manager to enforce certain OSHA regulations and provisions of the municipal building code. *Id.* In support of their contention that the third special duty exception to the Public Duty Doctrine applied, plaintiffs alleged reckless misconduct on the part of building inspector—specifically, that he recklessly failed to notify the building owner of the unsafe condition and recklessly failed to post a "do not occupy" notice on the building. *Id.* at *6. In upholding the trial court's dismissal of plaintiffs' lawsuit, we rejected the legal conclusion that defendant's conduct was reckless. Rather, we held that

[t]aking the strongest legitimate view of the facts in this case in favor of Plaintiffs, allowing all reasonable inferences in their favor, and discarding all countervailing evidence as the summary judgment standard requires, we have concluded that a reasonable person could not find that Inspector McKelvey's acts or omissions were the result of "intent, malice, or reckless misconduct." *Ezell*, 902 S.W.2d at 402; [a]ccord *Ford v. New Greater Hyde Park Missionary Baptist Church*, No. W2006-012614-COA-R9-CV, 2007 WL 4355490, at *8 (Tenn. Ct. App. Dec. 12, 2007) (Evidence found

sufficient to support a factual finding of recklessness for inspector's failure to post "do not occupy" sign in building collapse case, when more than a year after discovery of the building's defects, Inspector was aware owners had not begun repair or demolition and building continued to be used at full occupancy.).

*Kemper*, 2012 WL 1388371, at *6.

Likewise, in ***Gardner v. Insura Property & Casualty Ins. Co.***, 956 S.W.2d 1 (Tenn. Ct. App. 1997), plaintiffs argued that the special duty exception was met when they pled recklessness on the part of an officer in allowing an intoxicated driver to escape the scene of an accident. *Id.* at *2. This Court rejected the special duty exception based on the mere pleading of recklessness on the part of the officer based on his failure to implement various solutions to prevent the intoxicated driver's escape, to-wit:

> Plaintiff offers many scenarios, such as an immediate confiscation of Patillo's keys or his placement in the officer's patrol car, which could have prevented his escape. However, when viewed most favorably to the plaintiff, the undisputed material evidence does not establish that the officer's conduct was a gross or a reckless deviation from the reasonable standard of care, and the allegation that the officer was "reckless" is a legal conclusion, which, standing alone, does not state a cause of action. *See* ***Riggs, et al. v. Burson, et al.***, 941 S.W.2d 44 (Tenn. 1997).

*Id.* at *3. The same is true here. Although Mr. Kimble avers that Deputy John Doe was reckless in failing to place some "sign or signal of a hazardous situation," such assertions do not rise to the level of a "gross of reckless deviation from the reasonable standard of care." *Id.* Taking Mr. Kimble's factual allegations as true and giving all reasonable inferences in his favor, at most, he has pled that Deputy John Doe breached a duty to the general public when he left the scene of one downed tree to go to another. Because Mr. Kimble's complaint does not establish a special duty exception to the Public Duty Doctrine, his claim fails.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order dismissing Appellant's lawsuit. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Ryan Kimble, for all of which execution may issue if necessary.

s/ Kenny Armstrong

KENNY ARMSTRONG, JUDGE
